Esther Gladys Gugenheim (Esther G. Gugenheim) v. Commissioner. Albert Dick Gugenheim v. Commissioner.
Gugenheim v. Commissioner
Docket Nos. 20569, 20570.
United States Tax Court
1950 Tax Ct. Memo LEXIS 134; 9 T.C.M. (CCH) 638; T.C.M. (RIA) 50183; July 26, 1950
*134 E. Byron Singleton, Esq., for the petitioners. D. Louis Bergeron, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined deficiencies in income tax for the year 1946 against petitioner Esther Gladys Gugenheim in the amount of $1,276.17 and against petitioner Albert Dick Gugenheim in the amount of $1,276.18. The sole issue is whether petitioners' daughter, Betty Ann Gugenheim Manheim, was a partner with petitioner Albert Dick Gugenheim and his son, A. D. Gugenheim, Jr., in the machinery business from the formation of the partnership, on or about July 1, 1945, to the end of the partnership fiscal year in 1946. [1]
*135 The proceedings were consolidated for hearing. Findings of Fact Albert Dick Gugenheim and Esther Gladys Gugenheim, husband and wife, have been residents of Amarillo, Texas, within the second collection district of Texas, since 1939, where they filed their separate individual income tax returns, including their returns for 1946, in accordance with the community property laws of the State of Texas. Petitioners had two children, Albert Dick Gugenheim, Jr., who was about 21 years of age in 1939, and Betty Ann Gugenheim, who was then 17 years of age. Albert Dick Gugenheim, as head of the marital community, will hereinafter be referred to as petitioner. Since 1912 he has been a salesman and branch manager of concerns which sold heavy machinery, transmission equipment, belting, valves, and other related products, throughout Texas and surrounding states. With $1,000 borrowed on his insurance policy, petitioner went into the machinery business in Amarillo, Texas, in 1939, under the firm name of A. D. Gugenheim Company. Petitioner did most of the selling for A. D. Gugenheim Company. He had had a spinal injury that had incapacitated him for work in 1935 and 1936, but his condition *136 had gradually improved by 1939. He was well known in the machinery business. During 1940, 1941, 1943, and the period January 1, to June 30, 1945, petitioner's returns disclosed the following sales and expenses, among other expenses: Salaries
Traveling
and
Sales
Expenses
Wages
1940
$ 39,152.08
$1,912.49
$ 893.45
1941
115,676.46
1,634.53
4,201.78
1943
319,000.00
3,377.22
3,975.00
1/1 to 6/30/45
425,000.00
* 9,278.62 Salaries and wages were paid to a bookkeeper-secretary, to petitioner's son, Albert Dick, Jr., as well as to other salesmen hired from time to time. No salary was ever paid to petitioner's daughter Betty Ann Gugenheim (Manheim). Albert Dick Gugenheim, Jr., was employed by petitioner in 1941 at the age of 23 and continued in his employ until June 30, 1945, except for approximately two years when he was in the army. Betty Ann Gugenheim was in school in Norman, Oklahoma, when petitioner entered the machinery business in Amarillo, Texas, in 1939. At that time she was 18 or 19 years old. She came to Amarillo during her summer vacation in 1939 and worked in petitioner's store, *137 which handled belting, chain, V-belts, valves and general transmission items. She answered the phone and waited on customers, as did petitioner's wife. The following school year, 1939-1940, she went to school half-days at Canyon, Texas, 17 miles from Amarillo, and continued helping in the store before and after school. She also helped in the store when not at school during 1941 and 1942. In November, 1942, she was married to J. M. Manheim, and moved to Miami with her husband, where he was in the service. She returned to her father's home in Amarillo some time in 1943, while her husband was overseas, remaining there approximately a year and a half till her husband came back from overseas. While in Amarillo during this period, she worked an average of six hours daily in the store, except for three months she took off from work while her child was being born in 1944. Betty Ann could read the catalogue and knew all the names of the customers. After his discharge from the service J. M. Manheim returned to his prewar job of salesman for Louisiana Paper Company, in Shreveport, Louisiana. Betty Ann did not perform any services for the partnership from its formation on or about July 1, 1945, to *138 the end of the partnership fiscal year in 1946. As of June 30, 1945, prior to the formation of the partnership, the financial condition of petitioner's machinery business, as reflected by the balance sheet, was as follows: ASSETS
CURRENT ASSETS: Cash on Hand
$ 51.68
Cash in Bank
10,927.06
$10,978.74
Receivables - Accounts
$85,458.56 - Commissions
1,254.01
86,712.57
Inventory - Merchandise
55,313.05
Total Current Assets
$153,004.36
FIXED ASSETS: Autos and Trucks
$ 3,539.97
Less: Reserve for Depreciation
1,788.84
$ 1,751.13
Furniture and Fixtures
$ 2,530.90
Less: Reserve for Depreciation
934.15
1,596.75
Real Estate
401.00
Total Fixed Assets
3,748.88
OTHER ASSETS: Investments - Stocks
$ 120.00
Investments - U.S. Bonds
169.41
Utility Deposits
28.00
Patterns
120.00
Prepaid Insurance
611.57
Deposits - Browning Mfg. Co.
1,543.15
Total Other Assets
2,592.13
TOTAL ASSETS
$159,345.37
LIABILITIES AND NET WORTH
CURRENT LIABILITIES: Accounts Payable
$66,332.74
Accrued Payroll, Tax, Ad Valorem Tax, etc.
280.48
Notes Payable - First National Bank
10,000.00
A. D. Gugenheim, Sr.
232.15
Reserve for Federal Income Taxes
19,000.00
Total Current Liabilities
$ 95,845.37
DEFERRED LIABILITIES: Manhattan Rubber Mfg. Co.
$10,000.00
Mrs. Carl Springfield - Note
3,500.00
13,500.00
Total Liabilities
$109,345.37
NET WORTH OF PARTNERSHIP: A. D. Gugenheim, Sr. - 60%
$30,000.00
A. D. Gugenheim, Jr. - 20%
10,000.00
Mrs. James M. Manheim - 20%
10,000.00
Total Net Worth
50,000.00
TOTAL LIABILITIES AND NET WORTH
$159,345.37
*139 On or about July 1, 1945, petitioner, his son, his daughter and her husband executed a purported partnership agreement (to which the balance sheet above summarized was attached). The agreement provided: STATE OF TEXAS, COUNTY OF POTTER WHEREAS, A. D. Gugenheim, Sr., of Potter County, Texas, is the owner of a merchandising business located at 214-220 West Seventh Avenue in the City of Amarillo, County of Potter, State of Texas, having operated said business under the name of A. D. Gugenheim Company; and WHEREAS, the said A. D. Gugenheim, Sr. has agreed to sell a 20% interest in said business to his son, A. D. Gugenheim, Jr., and a 20% interest in said business to his daughter, Mrs. James M. Manhein, as of the first day of July, 1945; and WHEREAS, the parties involved have agreed, effective July 1, 1945, to thenceforth operate the business as a co-partnership: NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS: It is agreed by and between the parties as follows, to-wit: 1. The assets, liabilities, and net worth of the business and the property involved in this transaction is shown by the statement hereto attached and herein incorporated by this reference. The said A. D. Gugenheim, *140 Sr. has transferred, sold, assigned and conveyed, and by these presents does transfer, sell, assign and convey unto the said A. D. Gugenheim, Jr. a 20% interest in all of the current assets, fixed assets, and other assets shown on said statement effective as of July 1, 1945. The said A. D. Gugenheim, Sr. has further transferred, sold, assigned and conveyed, and by these presents does transfer, sell, assign and convey unto the said Mrs. James M. Manheim a 20% interest in all of the current assets, fixed assets, and other assets shown on said statement effective as of July 1, 1945. In payment for said interest in said property and other assets the said A. D. Gugenheim, Jr. has made, executed and delivered to the said A. D. Gugenheim, Sr. one certain promissory note in the principal amount of $10,000.00, dated July 1, 1945, bearing interest at the rate of 4% per annum, interest payable semi-annually, and due and payable on or before five years after date thereof, it being understood and agreed that the said A. D. Gugenheim, Jr. should have the privilege of paying all or any part of said note at any interest-paying date. In payment for said interest in said property and other assets the *141 said Mrs. James M. Manhein, joined by her husband, James M. Manhein, has made, executed and delivered to the said A. D. Gugenheim, Sr. one certain promissory note in the principal amount of $10,000.00, dated July 1, 1945, bearing interest at the rate of 4% per annum, interest payable semi-annually, and due and payable on or before five years after date thereof, it being understood and agreed that the said Mrs. James M. Manhein shall have the privilege of paying all or any part of said note at any interest-paying date. 2. It is understood and agreed that from and after July 1, 1945, the business in question shall be conducted as a co-partnership, the said A. D. Gugenheim, Sr. owning a 60% interest therein, the said A. D. Gugenheim, Jr. owning a 20% interest therein, and the said Mrs. James M. Manhein owning a 20% interest therein. 3. It is further agreed and understood that A. D. Gugenheim, Sr. shall remain in active charge of the business and shall devote all of his time and efforts to the conduct thereof in the same manner as he has heretofore done, and that in payment for his services as the active and managing partner he shall receive the sum of Twelve Thousand Dollars ($12,000.00) *142 per annum, which shall be charged as a partnership expense. 4. It is a fact that A. D. Gugenheim, Jr. is now in the armed service of the United States, and that James M. Manhein, husband of Mrs. James Manhein, is likewise in the service. It is contemplated that upon the return to civil life of the said A. D. Gugenheim, Jr. he will become active in the affairs of the co-partnership, and upon the happening of which event he will be paid a reasonable salary to be agreed upon between the partners which shall be commensurate with the services rendered by him. It is further contemplated that James M. Manhein, husband of one of the partners, upon his return to civil life, may desire to become an employee of the co-partnership or possibly take over the interest of his wife therein. In either event he likewise shall become an employee of the co-partnership and will be paid a salary by the partnership commensurate with the value of his services WITNESS our hands as of the the first day of July, 1945. A. D. Gugenheim, Sr. A. D. Gugenheim, Jr. Mrs. James M. Manhein James M. Manhein The agreement was signed by Manheim in Miami, Florida, or Shreveport, La.
The note for $10,000 given *143 by Betty Ann and her husband, referred to in the above agreement, was cancelled when the partnership was succeeded by A. D. Gugenheim Company, Inc., some time in July, 1946. This corporation has an authorized capital of $150,000, subscribed to as follows: Stockholder
Amount
Per Cent
A. D. Gugenheim
$ 85,000
56 2/3
A. P. Hancock
45,000
30
A. D. Gugenheim, Jr.
10,000
6 2/3
Betty Ann Manheim
10,000
6 2/3
Totals
$150,000
100
Respondent determined that Betty Ann Gugenheim Manheim was not a member of the partnership and increased petitioners' community income for the calendar year 1946 by the amount of her alleged distributable share of partnership income of $4,906.76. The partnership here in question was formed on or about July 1, 1945, with no intent on the part of Betty Ann Manheim and her alleged co-partners, petitioner A. D. Gugenheim and A. D. Gugenheim, Jr., in good faith and acting with a business purpose, that she join together with them in the present conduct of the enterprise. Betty Ann Manheim was not a partner with petitioner A. D. Gugenheim and his son at any time during the existence of the partnership. Opinion Petitioners urged *144 that their daughter, Betty Ann Gugenheim Manheim, was a partner with petitioner A. D. Gugenheim and his son in the machinery business from the formation of the partnership on or about July 1, 1945, to the end of the partnership fiscal year in 1946. Respondent determined that petitioners' daughter was not a member of the partnership and increased petitioner's community income for the calendar year 1946 by the amount of her supposed distributable share of partnership income of $4,906.76. We have disposed of this issue, the only issue in this proceeding, in our finding of fact that Betty Ann Gugenheim Manheim was not a partner with petitioner A. D. Gugenheim and his son at any time during the existence of the partnership. There is no showing as to the precise date in 1946 when the partnership fiscal year ended, but we have found as a fact that the partnership was formed on or about July 1, 1945, and was succeeded by a corporation sometime in July, 1946. Petitioners have not shown that Betty Ann was a partner during any part of this period. In making our finding on this issue we have been guided by the principles set forth in . In *145 that case the Supreme Court said: * * * our decision in ) clearly indicates the importance of participation in the business by the partners during the tax year. Petitioners have not met their burden of proof of showing that Betty Ann participated in the business of the partnership at any time. Petitioner Albert D. Gugenheim, who was the sole witness in these proceedings, testified that after leaving Amarillo, after her marriage in November, 1942, Betty Ann "came back with us in 1943" and remained in Amarillo and helped in the store there for approximately a year and a half until her husband came back from overseas. Petitioner did not say when in 1943 she returned to Amarillo. However, even if it was not until December, 1943, if she remained only a year and a half, it is clear that she did not remain in Amarillo beyond July 1, 1945, when the partnership was formed. Moreover, petitioner testified that Betty Ann's husband signed the partnership agreement in Miami or Shreveport, so it is clear that he had returned from overseas at the time the partnership was formed, and that therefore Betty Ann had left Amarillo to rejoin him. There *146 is no evidence that she performed any services for the business after her departure from Amarillo or at any time shared in its management or control. Accordingly, insofar as the performance of services or the sharing in the management and control of the partnership are concerned, it is clear that Betty Ann did not participate in the business of the partnership during the tax year. Nor is her purported capital contribution to the partnership of such a nature that we can hold on the strength of it without more that Betty Ann participated in the partnership. The consideration recited in the partnership agreement for her purported 20 per cent interest in the partnership was a note for $10,000, made by Betty Ann and her husband. To be sure, family partnerships were recognized in , and in , where there had been capital contributions by sons or daughters in the form of promissory notes. But in , there was at least a showing that the daughters possessed assets when the notes were made, and in what amount, and that they *147 understood that they were risking these assets if they entered the partnership. Moreover, the notes were later paid out of partnership profits. In , the son contributed stocks and bonds and some cash, in addition to the promissory note. Moreover, the note was later paid out of partnership profits. Here, the note was Betty Ann's sole purported capital contribution to the partnership, and there is no evidence that she and her husband possessed any assets when the note was made. Moreover, the evidence is not convincing that the note was ever paid. Petitioner testified that the note was cancelled at the time the corporation which succeeded the partnership was formed. He stated that she had accumulated sufficient earnings in the partnership at the time of the incorporation to cancel the note. However, he produced no records to substantiate this statement, and his testimony alone is the only evidence we have on the matter. Moreover, if Betty Ann's distributable share of the partnership profits in 1946 was sufficient to cancel a $10,000 note, we fail to understand why the partnership return, as indicated by the notices of deficiency herein, showed *148 only the sum of $4,906.76 to be distributable to her in 1946. The burden of proof is on petitioners to show that the note was paid, and it is our opinion that they have not met this burden. Petitioner's entire case rested on his own uncorroborated testimony. Neither his daughter, son, son-in-law, wife nor any other person testified. He was not a good witness. His hesitancy, uncertainty and manner of testifying were not convincing. The real question here, as said in , "is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts * * * the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." We have found, considering all the facts, that there was no such intent here as to Betty Ann, either on her part or on the part of her purported co-partners, and that she was not a partner with them at any time during the existence of the partnership here in question. We accordingly hold that respondent did not err in his determination *149 that petitioners' community income for the calendar year 1946 should be increased by the amount of Betty Ann Gugenheim Manheim's alleged distributable share of partnership income of $4,906.76. Decisions will be entered for the respondent. Footnotes
1. There is no statement in the record, the exhibits, the notice of deficiency, the petitions or the briefs as to the date when the partnership fiscal year ended, beyond the statement at the hearing by respondent's counsel that it ended March 31, 1946. No returns were introduced in evidence. However, the only ground on which petitioners contest respondent's determination that "the ordinary net income shown in the partnership's return as being distributable to Mrs. Manheim represents income taxable to your marital community $4,906.76" is that Mrs. Manheim was a partner and they may be deemed to have admitted that the partnership fiscal year ended within petitioners' taxable year 1946.↩
*. Indicates other selling expenses.↩